UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00885-GNS

JAMES WYATT                                                                          PLAINTIFF

v.

KENTUCKY COMMUNITY AND TECHNICAL
COLLEGE SYSTEM                                                                       DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (DN 13). The motion is ripe for adjudication, and for the reasons stated below, the Court **GRANTS** the motion.

### **I.      SUMMARY OF FACTS AND CLAIMS**

Plaintiff James Wyatt ("Wyatt") began his employment with Kentucky Community Technical College System ("KCTCS") in May 2011 as a Toyota T10 instructor. (Am. Compl. 2, DN 6). On June 16, 2014, he was promoted to the position of assistant professor. (Am. Compl. 2). In April 2015, the branch of KCTCS at which Wyatt worked, Jefferson Community and Technical College, hosted the "Skills U.S.A. Automotive Competition" ("the competition"). (Am. Compl. 2).

On April 22, 2015, Wyatt brought hair clippers to one of his classes to loan to a student who needed a haircut in anticipation of meeting the Secretary of Education at the competition. (Am. Compl. 2-3). Wyatt left the room in order to acquire supplies necessary for the competition, but secured the word of Don Martin, apparently an instructor and co-worker of

Wyatt's, that he would supervise Wyatt's class until Wyatt returned. (Am. Compl. 3). During Wyatt's absence, Caucasian students in his classroom cut the hair of the Mexican-African American student for whom Wyatt had brought the hair clippers. (Am. Compl. 3). The student who received the impromptu haircut described the incident as "horseplay" and advised that he was fine. (Am. Compl. 3).

On April 25, 2015, Wyatt met with the Dean of the Technical Campus, Bob Sillman ("Sillman"), a Human Resources representative, Laura Smith Naff, the Dean of Student Affairs, Ish Burke, and Lisa Browski. (Am. Compl. 3). He informed the group that he brought the hair clippers at the request of the student. (Am. Compl. 3). On April 28, 2015, Sillman met with Wyatt and advised him that KCTCS would not be renewing his contact, but that he would be paid until the expiration of his current contract. (Am. Compl. 4). Sillman also directed Wyatt to leave the premises immediately, with the result that Wyatt did not finish teaching his classes that semester or even that day. (Am. Compl. 4).

Wyatt filed this action asserting claims of racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 342.[1] (Am. Compl. 4-5, DN 1). KCTCS subsequently filed this motion to dismiss, and Wyatt did not file any response to KCTCS's motion.[2] The motion is thus ripe for review.

---

[1] While the Complaint initially named an additional defendant and asserted claim for punitive damages under the KCRA, that party and that claim were dropped from the Amended Complaint.
[2] Wyatt's failure to file a response alone constitutes grounds for granting KCTCS's motion. *See* LR 7.1(c). The Court will address the motion on the merits nonetheless in order to complete the record.

## II. JURISDICTION

The Court has jurisdiction over the parties pursuant to 28 U.S.C § 1331 as this case arises under the Constitution of the United States by virtue of Wyatt's claim under Title VII. This Court has supplemental jurisdiction over Wyatt's KCRA claim pursuant to 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In order to survive a 12(b)(6) motion, a pleading "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The complaint need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## IV. DISCUSSION

In its motion to dismiss, KCTCS asserts that Wyatt's amended complaint does not establish a *prima facie* case of reverse racial discrimination and that his amended complaint does not meet the plausibility standard required by *Iqbal* and *Twombly*. (Def.'s Mem. in Supp. of Mot.

3

to Dismiss 2-7, DN 13-1 [hereinafter Def.'s Mot. to Dismiss]). KCTCS also asserts that Wyatt's punitive damages claim under Title VII fails because, as a government agency, KCTCS is exempt from such damages. (Def.'s Mot. to Dismiss 8-9).

To prove his *prima facie* claim of racial discrimination, Wyatt must show that: "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). "Where, as here, a plaintiff alleges reverse discrimination—that is, he is a member of the majority claiming employment discrimination—the plaintiff bears the burden of demonstrating that he was intentionally discriminated against despite his majority status. *Id.* (internal quotation marks omitted) (citing *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)).

"In the past, litigants have met [the first requirement] through a variety of background circumstances." *Treadwell v. Am. Airlines, Inc.*, 447 F. App'x 676, 678 (6th Cir. 2011). In one case, the plaintiffs made the required showing through substantial statistical data reflecting promotion and hiring patterns in which an employer disproportionately hired minorities. *Sutherland*, 344 F.3d at 615-16. In another, the person in charge of hiring for the defendant was himself a minority. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002). Finally, in another case, the plaintiff was a victim of an "intense power struggle" in the defendant workplace based on race. *Boger v. Wayne Cty.*, 950 F.2d 316, 325 (6th Cir. 1991).

The only statement concerning KCTCS and race at all in the Amended Complaint, other than Wyatt's legal assertions, is that "[d]uring his employment, Professor Wyatt overheard the

administration discussing the need for more 'black professors' on campus." (Am. Compl. 4). Wyatt does not name the administrators he overheard, their positions with KCTCS, or the context of the conversation in which he overheard that statement. In short, Wyatt has not provided any background information regarding any discriminatory practices by KCTCS other than a passing statement made by unknown administrators in an absence of context. In light of the cases cited above, even accepting all of Wyatt's factual allegations as true, this is insufficient to show that KCTCS is the unusual employer who discriminates against the majority, *i.e.*, Caucasians.

Having failed to satisfy the first requirement for a *prima facie* case of reverse racial discrimination, Wyatt's Title VII and KCRA claims fail.[3] Absent Title VII claim that survives a motion to dismiss, Wyatt's request for punitive damages under Title VII does not survive a motion to dismiss. Accordingly, the Court will grant KCTCS's motion to dismiss as to all claims.

### V.     CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (DN 13) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**
June 28, 2016

cc:     counsel of record

---

[3] Reverse discrimination claims under the KCRA contain the same requirement as Title VII in order to establish a *prima facie* case. *See Flock v. Brown-Forman Corp.*, 344 S.W.3d 111, 117 (Ky. App. 2010). Accordingly, a finding that Wyatt has not shown background circumstances to support the suspicion that KCTCS is the unusual employer who discriminates against the majority forecloses both his Title VII and KCRA claims.